UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANA NELSON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br>STANDARD INSURANCE COMPANY, an Oregon company; COUNTRYWIDE FINANCIAL CORPORATION GROUP LONG TERM DISABILITY PLAN; COUNTRYWIDE FINANAICAL CORP., and DOES 1-50, inclusive,<br><br>Defendants. | CASE NO. 13cv188-WQH-MDD<br><br>ORDER |

HAYES, Judge:

    The matter before the Court is the Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss"), filed by all Defendants. (ECF No. 16).

**I.    Background**

    On January 23, 2013, Plaintiff Mariana Nelson initiated this action by filing a Complaint in this Court. (ECF No. 1).

    **A.    Allegations of the Complaint**

    Beginning in January 2004, Plaintiff was employed as a loan officer with Defendant Countrywide Financial Corp. *Id*. ¶¶ 1, 5. Plaintiff received long term

disability coverage under the Countrywide Financial Corporation Group Long Term Disability Plan, policy number 643382 ("Group Policy"), issued by Defendant Standard Insurance Corporation ("Standard"). *Id.* ¶¶ 1, 6. The Group Policy provides:

> DISABILITIES SUBJECT TO LIMITED PAY PERIODS
>
> A. Mental Disorders, Substance Abuse, and Other Limited Conditions.
>
> Payment of [long term disability ('LTD')] Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to by any one or more of the following, or medical or surgical treatment of one or more of the following:
>
> 1. Mental Disorders;
>
> 2. Substance Abuse; or
>
> 3. Other Limited Conditions. ...
>
> Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood, or stress-related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause (including any biological or biochemical disorder or imbalance of the brain) or the presence of physical symptoms. Mental Disorder includes, but is not limited to, bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, anxiety and anxiety disorders. ...
>
> Other Limited Conditions means chronic fatigue conditions..., any allergy or sensitivity to chemicals or the environment..., chronic pain conditions..., carpal tunnel or repetitive motion syndrome, temporomandibular joint disorder, or craniomandibular joint disorder.

*Id.* ¶ 8.

In April 2007, Plaintiff ceased working due to disability. *Id.* ¶ 9. Standard does not dispute Plaintiff's disability under the Group Policy. *Id.* On May 30, 2008, Plaintiff submitted a claim seeking long term disability benefits going back to April 2007. *Id.* ¶ 10. On July 10, 2008, Standard accepted the claim and paid Plaintiff disability benefits. *Id.* ¶ 11.

In January 2010, Standard informed Plaintiff that "LTD benefits have been terminated as of December 31, 2009 because [Plaintiff] no longer satisfies the Definition of Disability as stated in the Group Coverage." *Id.* ¶ 12. Plaintiff requested that Standard review the termination of benefits. *Id.* ¶ 14. On November 18, 2010, Plaintiff sent Standard a letter informing Standard that "she disagreed that her inability

to work stemmed from mental illness, but even if it did, Standard's practice of limiting her coverage to two years due to mental illness was discriminatory and contrary to California law." *Id.* ¶ 17.

On October 10, 2011, Standard issued its final decision, denying Plaintiff's long term disability claim after its administrative review unit evaluated the December 31, 2009 decision to close the claim. *Id.* ¶ 32. The basis of Standard's final denial was solely because "[t]he group policy limits the payment of LTD benefits to a maximum of 24 months, during your entire lifetime, for certain conditions..." and "[Plaintiff]'s diagnosis of Major Depression is considered to be a Mental Disorder and is subject to the 24 month maximum benefit period limitation." *Id.* Standard concluded, "[t]herefore, after 24 months we cannot consider [Plaintiff's] Major Depression or another mental disorder or another limited condition when determining whether [Plaintiff] is disabled, even if her Major Depression or other limited condition is still disabling." *Id.*

Plaintiff asserts the following causes of action: (1) Claim for Benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) Claim for Equitable Relief pursuant to 29 U.S.C. § 1132(a)(3); (3) Breach of Fiduciary Duty pursuant to 29 U.S.C. §§ 1104(a)(1), 1132(a)(3); and (4) Declaratory Relief. Each of Plaintiff's claims arise from her contention that the Group Policy's provision entitled, "Disabilities Subject to Limited Pay Periods," is unenforceable because Standard has not complied with California Insurance Code section 10144.[1] *See* ECF No. 1 ¶¶ 53, 59, 67, 73. Plaintiff brings the action on behalf of herself and a putative class consisting of all California residents who are participants in a group plan administered by Standard which contains the same

---

[1] Section 10144 provides:
No insurer issuing, providing, or administering any contract of individual or group insurance providing ... disability benefits ... shall refuse to insure, or refuse to continue to insure, or limit the amount, extent, or kind of coverage available to an individual, or charge a different rate for the same coverage solely because of a physical or mental impairment, except where the refusal, limitation or rate differential is based on sound actuarial principles or is related to actual and reasonably anticipated experience.
Cal. Ins. Code § 10144.

1  "Disabilities Subject to Limited Pay Periods" provision as the one in the Group Policy. *Id.* ¶ 33. Plaintiff requests declaratory, injunctive and equitable relief, as well as statutory damages, attorneys' fees and costs.

### B. Motion to Dismiss

On April 15, 2013, all Defendants filed the Motion to Dismiss. (ECF No. 16). Defendants request dismissal of the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and an award of costs and reasonable attorneys' fees incurred pursuant to 29 U.S.C. § 1132(g). Defendants assert that "[a]ll full-time employees [of Defendant Countrywide Financial Corp.] receive exactly the same disability coverage under the Group Policy on completely equal terms. The Group Policy authorizes payment of disability benefits up to age 65, but caps benefits at 24 months for disabilities caused by 'Mental Disorders, Substance Abuse, and Other Limited Conditions.'" (ECF No. 16-1 at 5 (quoting ECF No. 1 ¶ 8)). Defendants contend that the "entire Complaint rests on the false premise that Standard's enforcement of contractual benefit caps for Mental Disorders violates §10144. But [Plaintiff]'s discrimination theory is incompatible with the statutory language of §10144 and well established law defining the parameters of unlawful discrimination. Two California federal courts recently rejected Nelson's same discrimination theory as a matter of law...." *Id.* at 6. Defendants contend:

> Section 10144 does not mandate that disability insurance policies provide the same coverage for all types of disabilities. And §10144 does not regulate the content of disability insurance policies offered on equal terms to all employees. Standard did not single out [Plaintiff] for unequal treatment because of her mental impairment. [Plaintiff] obtained the same coverage under the Group Policy provided to all employees of Countrywide, and she obtained her coverage before she became mentally impaired. Standard simply enforced the non-discriminatory terms of the Group Policy, and paid benefits to [Plaintiff] for 24 months as required by the Group Policy.

*Id.* at 7.

On April 6, 2013, Plaintiff filed an opposition to the Motion to Dismiss. (ECF No. 18). Plaintiff contends:

> Section 10144 is a broad statute ... equally protecting those with physical

and mental impairments. It does not compare treatment of physical impairments to mental impairments. Rather, any exclusion – whether addressing physical or mental conditions – limiting the amount, extent or kind of coverage available must be supported with objective, actuarial support (or actual and reasonable experience). Insurance companies must have objective, fair reasons for placing individuals in a certain risk class – whether based on physical or mental characteristics.

*Id.* at 14. Plaintiff contends:

Countrywide and Standard arbitrarily limit disability coverage to two years for a broadly defined class of individuals with a wide array of impairments from allergies to Schizophrenia – solely due to the impairment. The result is discrimination against consumers like [Plaintiff] who have limited disability insurance available to them because of mental impairment without any scientific, actuarial basis. This arbitrary, discriminatory policy violates California Insurance Code Section 10144 ... and must be invalidated.

*Id.* at 5. Plaintiff also contends that a motion to dismiss "is not the proper vehicle for seeking a ruling on the merits – especially questions regarding interpretation of a California insurance regulation requiring facts outside the complaint." *Id.* at 10. Plaintiff requests leave to amend the Complaint if the Court grants the Motion to Dismiss.

On June 4, 2013, Defendants filed a reply in support of the Motion to Dismiss. (ECF No. 21). On June 28, 2013, the Court heard oral argument on the Motion to Dismiss.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff's "grounds" to relief must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). When

considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

**III. Discussion**

California Insurance Code § 10144 provides:

> No insurer issuing, providing, or administering any contract of individual or group insurance providing ... disability benefits ... shall refuse to insure, or refuse to continue to insure, or limit the amount, extent, or kind of coverage available to an individual, or charge a different rate for the same coverage solely because of a physical or mental impairment, except where the refusal, limitation or rate differential is based on sound actuarial principles or is related to actual and reasonably anticipated experience.

Cal. Ins. Code § 10144.

Plaintiff contends that the provision in the Group Policy limiting disability benefits for mental disorders to 24 months violates section 10144 and is therefore unenforceable. Plaintiff contends that "any exclusion – whether addressing physical or mental conditions – limiting the amount, extent or kind of coverage available must be supported with objective, actuarial support (or actual and reasonable experience)" in order to comply with section 10144. (ECF No. 18 at 14). Plaintiff contends that she has "limited disability insurance available to [her] because of mental impairment without any scientific, actuarial basis," and "[t]his arbitrary, discriminatory policy violates California Insurance Code Section 10144 ... and must be invalidated." *Id*. at 5.

In *Monterastelli v. Standard Insurance Co.*, No. CV 12-01669 (AGRx) (C.D. Cal. June 12, 2012), the court considered the same contention in the same factual situation. *See Monterastelli*, Slip Op. at 3, ECF No. 16-2 ("Plaintiff alleges that section

10144 'permits insurance companies ... to limit benefits under disability policies for mental or physical disabilities *IF* the limitations are supported by sound actuarial principles or are related to actual and reasonably anticipated experience.' Plaintiff contends that Defendant's 24-month limitation of benefits [for mental disabilities and other conditions] does not meet this threshold requirement. Thus, Plaintiff concludes that the limitation is unenforceable under section 10144."). The court examined the text of section 10144 and stated:

> On its face, section 10144 only addresses access to or charges for disability insurance. It does so by proscribing four types of conduct by an insurer: (1) refusal to insure; (2) refusal to continue to insure; (3) limitation on coverage; and (4) charging of a different rate for similar coverage. However, by its terms, the provision does not dictate or even address the content of insurance that insurers must provide the insureds. It leaves open the possibility that an insurer may provide unequal coverage for mental and physical disabilities. Therefore, if an insurer chooses to allocate more resources to physical disabilities than to mental disabilities, this decision does not run afoul of section 10144. The California Legislature did not seek to create parity of coverage for mental and physical disabilities when it enacted section 10144.

*Id.* at 4. The court concluded that "the California Supreme Court would interpret section 10144 as only ensuring that a given insurance plan affords disabled individuals equal access to and eligibility for the same benefits as non-disabled individuals." *Id.* at 5. The court stated that the plaintiff's complaint "converts a provision that only concerns the right to *access* insurance on equal terms into a legislative mandate for equal *coverage*." *Id.* The court stated, "Plaintiff received exactly what section 10144 promises: *access* to insurance. Defendant's 24-month cap goes to the *content* of the benefits under the policy, and, on the question of *content*, section 10144 is silent." *Id.* The court stated that, "so long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, no violation of section 10144 has occurred." *Id.* at 5-6 (citing *Equal Emp't Opportunity Comm'n v. CNA Ins. Cos.*, 96 F.3d 1039,1044 (7th Cir. 1996) (observing that a 24-month limit for mental disability benefits "may or may not be an enlightened way to do things but it is not discriminatory in the usual sense of the term")). The court granted defendant's motion to dismiss.

In *Townsend v. Thomson Reuters Group Disability Income Insurance Plan*, 867 F. Supp. 2d 1085 (C.D. Cal. 2012), the court considered the same contention in the same factual situation. *See id*. at 1086 ("The Complaint asserts that Defendant ... terminated Plaintiff's LTD benefits pursuant to a provision in the Plan that limits the payment of LTD benefits originating from a mental impairment to a period of 24 months.... [T]he Complaint alleges that Defendants' termination of these benefits was in violation of California Insurance Code § 10144, asserting that Section 10144 required Defendants to base any termination of her LTD benefits on actuarial data or evidence."). The court granted defendants' motion for summary judgment, holding that "Section 10144 does not apply to Plaintiff's claim." *Id*. The court stated: "Plaintiff was not singled out individually for a coverage limitation, nor was her coverage limited *because of* her mental condition. She was offered the same coverage as all other employees of Thomson Reuters. Her coverage was not limited because of her mental condition."). *Id*.

Both *Monterastelli* and *Townsend* distinguished *Chabner v. United of Omaha Life Ins. Co.*, 994 F. Supp. 1185 (N.D. Cal. 1998), *affirmed*, 225 F.3d 1042 (9th Cir. 2000). In *Chabner*, an insured who suffered from a rare form of muscular dystrophy brought an action against an insurer to recover for disability discrimination because his life insurance "premium was 96.5% greater than standard" despite the fact that his condition "had only a small effect on mortality." *Chabner*, 225 F.3d at 1046. Finding that defendant violated section 10144's prohibition against "charging different premiums for arbitrary reasons," the district court entered summary judgment for the plaintiff and the Court of Appeals affirmed. *Id*. at 1049. In *Monterastelli*, the court distinguished *Chabner* as follows: "[C]harging a different rate for individuals with certain disabilities is one of the specific acts section 10144 prohibits (absent sound actuarial principles to support the differential rate). In the instant case, Plaintiff does not allege that Defendant charged her a different rate; rather, Plaintiff alleges that Defendant enforced a 24-month cap on her disability payments for her mental disorder,

which is not one of the four insurance practices forbidden by section 10144." *Monterastelli*, Slip Op. at 7 n.4, ECF No. 16-2. Similarly, the court in *Townsend* stated: "Every case cited by both Plaintiff and Defendants has applied Section 10144 in situations where an individual has been discriminated against and denied coverage or charged higher rates for coverage compared to other individuals because of a mental or physical limitation. No court has held that Section 10144 requires insurers to offer equal benefits for both mental and physical disabilities." *Townsend*, 867 F. Supp. 2d at 1086 (citing *Chabner*, 994 F. Supp. 1185).

The Court finds the reasoning of *Monterastelli* and *Townsend* to be persuasive. As the Court of Appeals for the Ninth Circuit stated in the context of a challenge to a similar disability policy provision under the Americans with Disabilities Act, "[i]nsurers have historically and consistently made distinctions between mental and physical illness in offering health and disability coverage." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir. 2000) (quotation omitted). "[H]ad Congress intended to control which coverages had to be offered by employers, it would have spoken more plainly because of the well-established marketing process to the contrary." *Id*. Accepting all facts alleged in the Complaint as true, the Group Policy's provision entitled, "Disabilities Subject to Limited Pay Periods," does not violate California Insurance Code § 10144. The Court finds that Plaintiff has failed to state a claim upon which relief may be granted because the Complaint "lack[s] a cognizable legal theory." *Balistreri*, 901 F.2d at 699 (citation omitted).

In a footnote in her brief, Plaintiff states: "Even if the [section] 10144 claim is not viable, plaintiff has other bases for her ERISA claims, including a claim for benefits owed under the physical, sleep disability, and breach of fiduciary duty for concurrent application of the Mental Disorder limitation to disability caused by a physical impairment." (ECF No. 18 at 11 n.1). In the initial, "Factual Background" section of the Complaint, Plaintiff alleges that Plaintiff told Standard that she had been diagnosed with sleep disorders, "so the disability claim should not be limited to mental disorders."

1  (ECF No. 1 ¶ 11). After the "Factual Background" section, the Complaint alleges four
2  Counts. Each Count references Plaintiff's theory that the Group Policy violates
3  California Insurance Code § 10144. *Id.* ¶¶ 53-55, 59, 61, 67, 70, 73. No Count
4  references any other basis for liability, such as that Defendants failed to recognize that
5  Plaintiff's disability was caused by a physical impairment. To the extent Plaintiff
6  contends that the Complaint alleges a basis for her claims other than her section 10144
7  theory, the Court finds that those other claims have not been adequately alleged.

8  Defendants request attorney's fees pursuant to 29 U.S.C. § 1132(g). Section
9  1132(g) provides that a "court in its discretion may allow a reasonable attorney's fee
10 and costs of action to either party." 29 U.S.C. § 1132(g)(1). "In general, a court
11 considering whether to award attorney's fees and costs under ERISA must consider five
12 factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of
13 the opposing party to satisfy an award of fees; (3) whether an award of fees would deter
14 others from breaching duties under similar circumstances; (4) whether the party
15 requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or
16 to resolve a significant legal question regarding ERISA; and (5) the relative merits of
17 the parties' positions." *Cal. Ironworkers Field Pension Trust v. Loomis Sayles & Co.*,
18 259 F.3d 1036, 1048 (9th Cir. 2001) (citations omitted). After considering the relevant
19 factors, the Court declines to award attorney's fees to Defendants.
20 //
21 //
22 //
23 //
24 //
25 //

## IV. Conclusion

27  IT IS HEREBY ORDERED that the Motion to Dismiss is GRANTED. (ECF No.
28  16). The Complaint is dismissed without prejudice. No later than thirty (30) days from

the date this Order is filed, Plaintiff may file a motion for leave to amend the Complaint, accompanied by a proposed first amended complaint. If no motion for leave to amend the Complaint is filed within thirty days, the Court will order the Clerk of the Court to close this case.

DATED: July 17, 2013

**WILLIAM Q. HAYES**
United States District Judge