UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANA NELSON, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br>vs.<br>STANDARD INSURANCE COMPANY, an Oregon company; COUNTRYWIDE FINANCIAL CORPORATION GROUP LONG TERM DISABILITY PLAN; COUNTRYWIDE FINANCIAL CORP., and DOES 1-50, inclusive,<br><br>        Defendants. | CASE NO. 13cv188-WQH-MDD<br><br>ORDER |

HAYES, Judge:

  The matter before the Court is the Motion to Amend Order, filed by Plaintiff Mariana Nelson. (ECF No. 42).

## I.  Background

  On January 23, 2013, Plaintiff initiated this action by filing a Complaint in this Court. (ECF No. 1).

### A.  Allegations of the Complaint

  Beginning in January 2004, Plaintiff was employed as a loan officer with Defendant Countrywide Financial Corp. *Id.* ¶¶ 1, 5. Plaintiff received long term disability coverage under the Countrywide Financial Corporation Group Long Term

Disability Plan, policy number 643382 ("Group Policy"), issued by Defendant Standard Insurance Company ("Standard"). *Id.* ¶¶ 1, 6. The Group Policy provides:

DISABILITIES SUBJECT TO LIMITED PAY PERIODS

A. Mental Disorders, Substance Abuse, and Other Limited Conditions.

Payment of [long term disability ('LTD')] Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to by any one or more of the following, or medical or surgical treatment of one or more of the following:

1. Mental Disorders;

2. Substance Abuse; or

3. Other Limited Conditions. ...

Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood, or stress-related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause (including any biological or biochemical disorder or imbalance of the brain) or the presence of physical symptoms. Mental Disorder includes, but is not limited to, bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, anxiety and anxiety disorders. ...

Other Limited Conditions means chronic fatigue conditions..., any allergy or sensitivity to chemicals or the environment..., chronic pain conditions..., carpal tunnel or repetitive motion syndrome, temporomandibular joint disorder, or craniomandibular joint disorder.

*Id.* ¶ 8.

In April 2007, Plaintiff ceased working due to disability. *Id.* ¶ 9. Standard does not dispute Plaintiff's disability under the Group Policy. *Id.* On May 30, 2008, Plaintiff submitted a claim seeking long term disability benefits going back to April 2007. *Id.* ¶ 10. On July 10, 2008, Standard accepted the claim and paid Plaintiff disability benefits. *Id.* ¶ 11.

In January 2010, Standard informed Plaintiff that "LTD benefits have been terminated as of December 31, 2009 because [Plaintiff] no longer satisfies the Definition of Disability as stated in the Group Coverage." *Id.* ¶ 12. Plaintiff requested that Standard review the termination of benefits. *Id.* ¶ 14. On November 18, 2010, Plaintiff sent Standard a letter informing Standard that "she disagreed that her inability to work stemmed from mental illness, but even if it did, Standard's practice of limiting

her coverage to two years due to mental illness was discriminatory and contrary to California law." *Id.* ¶ 17.

On October 10, 2011, Standard issued its final decision, denying Plaintiff's long term disability claim after its administrative review unit evaluated the December 31, 2009 decision to close the claim. *Id.* ¶ 32. The basis of Standard's final denial was solely because "[t]he group policy limits the payment of LTD benefits to a maximum of 24 months, during your entire lifetime, for certain conditions..." and "[Plaintiff]'s diagnosis of Major Depression is considered to be a Mental Disorder and is subject to the 24 month maximum benefit period limitation." *Id.* Standard concluded, "[t]herefore, after 24 months we cannot consider [Plaintiff's] Major Depression or another mental disorder or another limited condition when determining whether [Plaintiff] is disabled, even if her Major Depression or other limited condition is still disabling." *Id.*

In the original Complaint, Plaintiff asserted the following causes of action: (1) Claim for Benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) Claim for Equitable Relief pursuant to 29 U.S.C. § 1132(a)(3); (3) Breach of Fiduciary Duty pursuant to 29 U.S.C. §§ 1104(a)(1), 1132(a)(3); and (4) Declaratory Relief. Each of Plaintiff's four claims in the original Complaint arose from her contention that the Group Policy's provision entitled, "Disabilities Subject to Limited Pay Periods," is unenforceable because Standard has not complied with California Insurance Code section 10144.[1] (ECF No. 1 ¶¶ 53, 59, 67, 73). Plaintiff brought the action on behalf of herself and a putative class consisting of all California residents who are participants in a group plan

---

[1] Section 10144 provides:
No insurer issuing, providing, or administering any contract of individual or group insurance providing ... disability benefits ... shall refuse to insure, or refuse to continue to insure, or limit the amount, extent, or kind of coverage available to an individual, or charge a different rate for the same coverage solely because of a physical or mental impairment, except where the refusal, limitation or rate differential is based on sound actuarial principles or is related to actual and reasonably anticipated experience.
Cal. Ins. Code § 10144.

administered by Standard which contains the same "Disabilities Subject to Limited Pay Periods" provision as the one in the Group Policy. *Id.* ¶ 33.

### B. Order on Motion to Dismiss the Complaint

On July 17, 2013, the Court issued an order granting Defendants' Motion to Dismiss the original Complaint. (ECF No. 23). The Court found that Plaintiff failed to state a claim upon which relief may be granted because the Complaint "lack[ed] a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). The Court stated:

> [T]he reasoning of *Monterastelli v. Standard Ins. Co.* [No. CV 12-1669 (AGRx), 2012 WL 8679843 (C.D. Cal. June 12, 2012)] and *Townsend v. Thomson Reuters Group Disability Income Ins. Plan* [867 F. Supp. 2d 1085 (C.D. Cal. 2012)] [is] persuasive. As the Court of Appeals for the Ninth Circuit stated in the context of a challenge to a similar disability policy provision under the Americans with Disabilities Act, '[i]nsurers have historically and consistently made distinctions between mental and physical illness in offering health and disability coverage.' *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir. 2000) (quotation omitted). '[H]ad Congress intended to control which coverages had to be offered by employers, it would have spoken more plainly because of the well-established marketing process to the contrary.' *Id.* Accepting all facts alleged in the Complaint as true, the Group Policy's provision entitled, 'Disabilities Subject to Limited Pay Periods,' does not violate California Insurance Code § 10144.

(ECF No. 23 at 9). The Court dismissed the original Complaint without prejudice.

### C. First Amended Complaint

On October 31, 2013, Plaintiff filed the First Amended Complaint ("FAC"), which alleges five counts. (ECF No. 31). Counts 1-4 of the FAC re-allege the theory underlying Counts 1-4 of the original Complaint that the Group Policy violates California Insurance Code § 10144. Count 5 alleges an individual claim for benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), "without regard to the potential applicability of the provisions of California Insurance Code Section 10144." (ECF No. 31 ¶ 97). Count 5 alleges that the "proximate cause of her inability to work, is in fact, some form of Physical Disease or Injury and not any form of Mental Illness or depression, as defined by the Group Policy." *Id.* ¶ 101. Count 5 alleges:

> Defendant repeatedly discounted the objective and documented evidence of physical injury, condition, or disease as causes of Plaintiff's inability to work and unreasonably attributed Plaintiff's mental impairments as the cause of her disability in order to apply the limitation of coverage for two years. Defendant failed to accept the overwhelming evidence that, but for the various sleep disorders, there is no evidence that any mental impairment or illness would prevent Plaintiff from working.

*Id.* ¶ 114. Counts 1-4 of the FAC are brought on behalf of Plaintiff and a putative class; Count 5 is brought on behalf of Plaintiff only.

### D. Order on Motion to Dismiss the FAC

On February 21, 2014, the Court issued an order granting Defendants' Motion to Dismiss Counts 1-4 of the FAC and denying the Motion to Dismiss Count 5 of the FAC. (ECF No. 39).

### E. Motion to Amend Order

On March 20, 2014, Plaintiff filed the Motion to Amend Order. (ECF No. 42). Plaintiff moves the Court to amend its February 21, 2014 Order to include language allowing Plaintiff to request the Court of Appeals for the Ninth Circuit to hear an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Plaintiff requests permission to seek an interlocutory appeal as to the following issue: "Does California Insurance Code Section 10144 limit and regulate Standard Insurance Company and employers from utilizing a disability insurance policy to employees, as a part of a benefits package, that limits coverage to 24 months for those employees with mental impairments - due to the mental condition?" (ECF No. 42-1 at 5). Plaintiff contends:

> [A]llowing [Plaintiff] to appeal the Court's order dismissing all class and individual claims based on Section 10144 at this stage of litigation will materially advance the ultimate termination of the litigation by allowing the Ninth Circuit to address this important question of law prior to discovery and months of litigation. Additionally, the ability to request the Ninth Circuit to hear this appeal provides the potential class members with an avenue of appeal without requiring them to wait until the conclusion of [Plaintiff]'s individual [ERISA] claim. The Ninth Circuit may also choose to use its ability to certify this issue and allow the California Supreme Court the opportunity to interpret its legislature's statute.

*Id.*

On April 15, 2014, Defendants filed an opposition to the Motion to Amend

Order. (ECF No. 48). Defendants contend that Plaintiff "fails to satisfy her high burden of proof that her §10144 discrimination theory presents a question of exceptional importance necessitating immediate Ninth Circuit review." *Id.* at 6. Defendants contend that Plaintiff's "interpretation of §10144 does not present a substantial ground for a difference of opinion. Her interpretation is incompatible with the statutory language of §10144 and well established law." *Id.* at 5. Defendants contend that "an interlocutory appeal would prolong the litigation by permitting [Plaintiff] to further pursue a potentially moot issue, given [Plaintiff]'s claim in Count V of the First Amended Complaint that she has a physical disability." *Id.* at 6.

On April 22, 2014, Plaintiff filed a reply in support of the Motion to Amend Order. (ECF No. 51).

## II. Discussion

"Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1981), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983); *see also* 28 U.S.C. § 1292(b).[2] The "certification requirements of the statute" are "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

---

[2] Section 1292(b) provides:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.
28 U.S.C. § 1292(b).

"While Congress did not specifically define what it meant by 'controlling,' the legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.* (citations omitted). "[S]ection 1292(b) is to be applied sparingly and only in exceptional cases," and the movant "'has the burden of persuading the court ... that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Id.* at 1026, 1027 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)); *cf. Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) ("Interlocutory appeals are generally disfavored because they are disruptive, time-consuming, and expensive. These appeals add to the heavy workload of the appellate courts, require consideration of issues that may become moot, and undermine the district court's ability to manage the class action.") (considering interlocutory appeals pursuant to Federal Rule of Civil Procedure 23(f)).

Count 5 of the FAC alleges an individual claim for benefits under ERISA "without regard to the potential applicability of the provisions of California Insurance Code Section 10144." (ECF No. 31 ¶ 97). If Plaintiff prevails on Count 5 and receives a full award of benefits and attorney's fees pursuant to ERISA, Plaintiff's individual claims pursuant to her California Insurance Code § 10144 theory of recovery could be rendered moot. Plaintiff contends that, if she were to prevail on Count 5 and decide it is "financially inappropriate" to appeal the Court's Order dismissing Counts 1-4, then "[i]t is a case where the success of the individual plaintiff may spell disaster for the rights of the potential class." (ECF No. 42-1 at 13 n.2). However, this is not a situation where each class member's "claim is too small to justify the expense of litigation." *Chamberlan*, 402 F.3d at 958. If the California Insurance Code § 10144 theory advocated by Plaintiff is ultimately successful, each class member would potentially be entitled to disability benefits up to age 65, instead of being restricted to only 24 months of disability benefits. (ECF No. 31 ¶¶ 8-9).

Moreover, Plaintiff has failed to show that this is a situation where "allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. The sole remaining claim is an individual claim for benefits pursuant to ERISA. "[A] primary goal of ERISA ... [is] to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005) (quotation omitted). Plaintiff has pointed to no aspect of her Count 5 ERISA claim which could delay the expeditious resolution of this sole remaining claim.

After considering the relevant factors and the filings of the parties, the Court finds that Plaintiff has failed to meet her "burden of persuading the court ... that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *In re Cement Antitrust Litig.*, 673 F.2d at 1026 (quotation omitted). In particular, Plaintiff has failed to adequately show that there is a "controlling question of law" within the meaning of § 1292(b), and that an immediate appeal from the February 21, 2014 Order may materially advance the ultimate termination of the litigation. Accordingly, the Motion to Amend Order is denied.

### III. Conclusion

IT IS HEREBY ORDERED that the Motion to Amend Order is DENIED. (ECF No. 42).

Dated: 6/13/14

HON. WILLIAM Q. HAYES
UNITED STATES DISTRICT JUDGE